# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
An Apple iCloud account using email address ) Case No. **25mj212**
nineinchninja@icloud.com, believed to be used by Victor )
MCDONALD and associated to telephone number (619) )
791-8292 (the Target Account) )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: seeee Attachment A

located in the **Northern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 USC 952, 960 | Importation of Controlled Substances |

The application is based on these facts:

See Affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Luis A. Martinez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 1/16/2025

*Judge's signature*

City and state: San Diego, CA 92101

Hon. Mitchell D. Dembin   US Magistrate Judge
*Printed name and title*

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

This warrant applies to information associated with an Apple iCloud account using email address nineinchninja@icloud.com, believed to be used by Victor MCDONALD and associated to telephone number (619) 791-8292 (the **Target Account**), an Apple Inc. (Apple) iCloud account that is stored at premises owned, maintained, controlled, and/or operated by Apple, an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.

# ATTACHMENT B
# ITEMS TO BE SEIZED

## I.  Service of Warrant

The officer executing the warrant shall permit Apple Inc. (Apple), as custodian of the files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

## II.  Information to be Disclosed by Apple

To the extent that the information is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Apple is required to disclose to the United States the following information for the account listed in Attachment A from September 4, 2024, up to and including October 4, 2024:

- A. All subscriber and user information pertaining to the **Target Account**, in any form kept. Specifically:

    1. All identity information, including full name(s), physical address(es), telephone number(s), email address(es) (including primary, alternate, rescue, and notification email address(es), and verification information for each email address), the IP address(es) used to register the **Target Account**, methods of connecting, means and source of payment (including any credit or bank account numbers), and information related thereto, including the date(s) on which the **Target Account** were created and the length of service;

    2. All device(s) associated with or used in connection with the **Target Account** and all device identifiers related thereto, including all current and past trusted or authorized iOS devices and computers, serial numbers, Unique Device Identifiers (UDID), Advertising Identifiers (IDFA), Global Unique Identifiers (GUID), Media Access Control (MAC) addresses, Integrated Circuit Card ID numbers (ICCID), Electronic Serial Numbers (ESN), Mobile Electronic Identity Numbers (MEIN),

        Mobile Equipment Identifiers (MEID), Mobile Identification Numbers (MIN), Subscriber Identity Modules (SIM), Mobile Subscriber Integrated Services Digital Network Numbers (MSISDN), International Mobile Subscriber Identities (IMSI), and International Mobile Station Equipment Identities (IMEI);

3. All records and information regarding locations where the **Target Account** or device(s) associated with the **Target Account** were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps; and,

4. All records pertaining to communications between Apple and the user(s) of the **Target Account**, including contacts with support services and records of actions taken.

B. All records pertaining to the types of service(s) used by the **Target Account**;

C. All activity, connection, and transactional logs for the **Target Account** (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID logs, and sign-on logs for all Apple services;

D. The contents of all instant messages associated with the **Target Account**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the **Target Account** (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

E. The contents of the **Target Account** stored on iCloud, limited to the following:

      1. All voicemails and audio files;

      2. All images and videos, including those available on iCloud Photo Sharing, My Photo Stream, and iCloud Photo Library;

      3. The content of all applications, including those in iCloud Backup and/or iCloud Drive, capable of being used to communicate with others, including but not limited to Instagram, Facebook, and WhatsApp;

      4. All address books, contact, and buddy lists; and,

      5. All notes.

  F. All files, keys, or other information necessary to decrypt any data produced in an encrypted form pertaining to the **Target Account**, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

## III. Information to be Seized by the United States

All information described above in Section II that constitutes evidence, fruits, and instrumentalities of violations of federal criminal law, namely, importation of controlled substances and conspiracy to do the same, in violation of Title 21, United States Code, Sections 952, 960, and 963, those violations involving the user(s) of the **Target Account**. Specifically:

  A. Electronic records, such as communications, photographs, audio files, videos, and location data, tending to indicate efforts to import federally controlled substances, which may include evidence of unexplained wealth;

  B. Evidence indicating how and when the **Target Account** was accessed or used to determine the user(s)' travel to or presence at locations involved in efforts to import federally controlled substances, such as Ports of Entry, stash houses, load locations, or other meet/delivery points;

  C. Evidence indicating the motive, intent, or consciousness of guilt of the user(s) of the **Target Account** as it relates to the crimes under

        investigation, *i.e.,* the importation of federally controlled substances;

D.     Evidence indicating the identity of the person(s) who created or used the **Target Account**; and,

E.     Evidence indicating the identity of the person(s) who communicated with the **Target Account** about the importation of federally controlled substances, including records that help reveal those person(s)' whereabouts.

# AFFIDAVIT IN SUPPORT OF AN
# APPLICATION FOR A SEARCH WARRANT

I, Special Agent Luis Martinez, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for information associated with the following iCloud account that is stored at premises owned, maintained, controlled, and/or operated by Apple Inc. (Apple), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California:

> An Apple iCloud account using email address nineinchninja@icloud.com, believed to be used by Victor MCDONALD and associated to telephone number (619) 791-8292 (the **Target Account**)

as described further in Attachment A for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, importation of federally controlled substances and conspiracy to do the same, in violation of Title 21, United States Code, Sections 952, 960, and 963, as described in Attachment B. This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Apple to disclose to the United States copies of the information (including the content of communications) described in Section II of Attachment B. Upon receipt of the information, United States-authorized persons will review that information to locate the items described in Section III of Attachment B.

2. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers who have personal knowledge of the events and circumstances described herein; my review of documents and reports related to this investigation; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others

have learned during the course of this investigation. Conversations are set forth below in substance unless noted. Dates, times, and amounts are approximate.

## BACKGROUND AND EXPERIENCE

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since October of 2022. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported

into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Account**; and/or

3

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Section 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

**A.  Background**

8. On October 4, 2024, at approximately 5:00 AM, Victor MCDONALD, ("MCDONALD"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry. MCDONALD was the driver, sole occupant, and registered owner of a 2012 Chevrolet Equinox bearing California license plates.

9. A Customs and Border Protection Officer received two negative Customs declarations from MCDONALD. MCDONALD stated he was crossing the border to go to San Diego, California. The vehicle was referred for further inspection due to a computer-generated alert.

10. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the rear passenger area. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the rear seat of the vehicle.

11. Further inspection of the vehicle resulted in the discovery of 13 packages concealed in a non-factory compartment beneath the rear passenger seats, with a total approximate weight of 15.56 kgs (34.30 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

4

12. MCDONALD was placed under arrest at approximately 6:54 am. MCDONALD was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

13. A blue Apple iPhone was found in MCDONALD'S front pocket. The phone was seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendant and his Vehicle. On October 7, 2024, a federal search warrant was executed on the iPhone. The cellphone extraction revealed that the telephone number associated with the phone was (619) 791-8292, and the associated Apple ID was nineinchninja[at]icloud.com (**Target Account**). The extraction also revealed that MCDONALD backed up data from the cellphone to his iCloud account.

14. Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Account**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Account** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

**Background Concerning Apple**

15. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

5

**16.** Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web-browsers or mobile and desktop applications (apps). As described in further detail below, the services include email, instant messaging, and file storage:

    a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

    b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages (iMessages) containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

    c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data.[1] iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

---

[1] As stated above, the cellphone extraction reflects that the **Target Account** utilize iCloud Backup.

6

    d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

    e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

    f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System (GPS) networks, and Bluetooth, to determine a user's approximate location.

  17. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

  18. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

  19. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone number(s). The user may

7

also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address (IP address) used to register and access the account, and other log files that reflect usage of the account.

20. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

21. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number (ICCID), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address (MAC address), the unique device identifier (UDID), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer

8

service, including communications regarding a particular Apple device or service, and the repair history for a device.

22. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service (SMS) and Multimedia Messaging Service (MMS) messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

## **ITEMS TO BE SEIZED**

23. Investigators know that individuals working with criminal organizations often use multiple communication platforms in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Indeed, based on training and experience, investigators are aware that, in addition to telephone and text messaging services (*i.e.*, MMS and SMS), other communication platforms, like iMessage and WhatsApp, are also often used by drug traffickers to engage in their illegal activity. These communication services can be used to coordinate payments and meetings, conduct negotiations and other matters relating to the criminal scheme, and to send location data, photographs, audio files, and/or videos, concerning the criminal activity, all of which are available from iCloud as outlined above. Based on my training and experience, voicemails,

audio files, photographs, videos, and documents also are often created and used in furtherance of criminal activity. Thus, stored communications and files connected to the **Target Account** may provide direct evidence of the offenses under investigation. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

24. Account activity may also provide relevant insight into an account owner's state of mind as it relates to the offenses under investigation. For example, information in the account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications indicating a plan to commit a crime) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement). Communications, notes, contacts, and other information that Apple can produce related to the **Target Account**, such as location data, also can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation, including addresses and/or vehicles used by the subjects of the investigation. And, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation, such as services used to communicate with co-conspirators. Therefore, Apple's servers are likely to contain stored electronic communications and information constituting evidence of the crimes under investigation.

25. Apple's servers also are likely to contain "user attribution" evidence. Such evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, device information, the data associated with the foregoing (such as geo-location, date, and time information), photographs, videos, and audio files may be evidence of who used or controlled the **Target Account** at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices – and thereby which user(s) – likely accessed the **Target Account**. Such

information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

### **PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

26. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Apple are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Apple for the relevant account and then to analyze the contents of that account on the premises of Apple. The impact on Apple's business would be severe.

27. Therefore, I request authority to seize all content from the **Target Account**, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Apple, to protect the rights of the subject(s) of the investigation, and to effectively pursue this investigation, authority is sought to allow Apple to make a digital copy of the entire contents of the account subject to seizure, as described in Section II of Attachment B. The copy will be provided to me or to any authorized federal investigator. The copy will be forensically imaged, and the images will then be analyzed to identify communications and other data subject to seizure pursuant to Section III of Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

28. Analyzing the data to be provided by Apple may require special technical skills, equipment, and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common applications do not store data as searchable text. The data may be saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

29. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to these warrants may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the examination will complete the analysis within **ninety (90) days** of receipt of the data from the service provider, absent further application to this Court.

30. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of the warrant. Investigators are aware from training and experience that planning and coordinating a drug-importation offense often takes weeks. Investigators also know that criminal associates are often unaware of an arrest and will continue to attempt to contact the arrestee after his arrest. As such, investigators seek all materials from Apple for the **Target Account** from September 4, 2024, up to and including the date of arrest on October 4, 2024.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

31. There have been no prior attempts to obtain this evidence, except that on or about October 7, 2024, investigators obtained a search warrant for a telephone seized from MCDONALD at the time of his arrest and subsequently, pursuant to a search warrant, investigators obtained information that had been downloaded from that telephone. Investigators may obtain some duplicate data from a search of the telephone to the extent it utilizes that iCloud account.

### CONCLUSION

32. Based on the forgoing, I request that the Court issue the proposed warrant.

_____
Special Agent Luis Martinez
Homeland Security Investigations

12

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 16th of January, 2025.

_____
HONORABLE MITCHELL D. DEMBIN
UNITED STATED MAGISTRATE JUDGE